IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS OCHS, et al. | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| READING HOSPITAL | : | No. 14-4017 |
| Defendant | : | |

**MEMORANDUM**

This case involves a personal injury claim filed by Plaintiffs Thomas Ochs and Laura Ochs against Defendant Reading Hospital arising from an alleged trip and fall on its premises. Presently before me is Reading Hospital's motion for summary judgment along with Plaintiffs' response, Reading Hospital's reply, and Plaintiffs' sur-reply. The sole question at issue is whether Plaintiffs' claims are barred by the "borrowed servant" doctrine of the Pennsylvania's Workers' Compensation Act. For the reasons that follow, I conclude that Thomas Ochs was a borrowed servant and that Plaintiffs' claims are barred pursuant to that doctrine. As a result, Reading Hospital's motion for summary judgment is being granted.

I.     **FACTUAL BACKGROUND**

Thomas Ochs tripped and fell on steps at Reading Hospital. At the time, he was a contractual employee of AMN Healthcare, a temporary health care staffing company. Mr. Ochs was assigned by AMN to work at Reading Hospital as a consultant hired to assist in training Reading Hospital employees in using "Epic," an electronic health record software

program.

By way of background, AMN contracted with Reading Hospital to provide staffing support services to Reading Hospital for the implementation of the Epic software. Generally, in the hiring process AMN interviewed Epic consultants, ensured all documentation was completed according to Reading Hospital's specifications and provided Reading Hospital with a list of screened Epic consultants. Pursuant to its contract with Reading Hospital, AMN also paid the Epic consultants' wages, withheld taxes, paid Social Security taxes as well as unemployment insurance and maintained workers' compensation insurance coverage.

Mr. Ochs responded to an online posting for the job and completed a telephone interview with an AMN recruiter prior to being hired as a consultant for a month-long assignment at Reading Hospital. When he arrived at Reading Hospital on January 30, 2012, Mr. Ochs participated in hospital orientation and training prior to the "go-live" of the Epic system on February 3, 2012. Over the course of this training, instructional designers and trainers taught the Epic consultants Reading Hospital's customizations of the Epic program.

After training, Reading Hospital determined the appropriate assignment for each of the consultants and established a work schedule for each consultant. Mr. Ochs was assigned to the psychiatric unit. He was required to check-in at the beginning of each shift with a Reading Hospital lead or floor manager and check out with hospital staff prior

to taking a break or lunch. Although an AMN liaison was stationed at a "command center" in the hospital, the liaison served an administrative role and did not have any contact with Mr. Ochs regarding his day-to-day activities.

Mr. Ochs' work was done on hospital equipment. He was provided with a badge and vest with a Reading Hospital logo that he was required to wear at all times while at the hospital. He was also required to turn in a timecard to Reading Hospital for approval.

On February 7, 2013, Mr. Ochs was injured when he tripped on overgrown ivy and fell while walking up the steps at Reading Hospital. He advised the Reading Hospital nurse manager in his building of his fall and notified his AMN recruiter located in California. Mr. Ochs returned to his home in Chicago, Illinois, a few days afer his accident.

## II.   STANDARD OF REVIEW

The standard of review for summary judgment is well established. A reviewing court may enter summary judgment where there are no genuine issues as to any material fact and a party is entitled to judgment as a matter of law. The evidence presented must be viewed in the light most favorable to the non-moving party. The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. In deciding the motion for summary judgment, it is not the function of the court to decide disputed questions of fact, but only to determine whether genuine issues of fact exist.

The moving party has the initial burden of identifying relevant evidence which it believes shows an absence of a genuine issue of material fact and supports its claim. The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings and designate specific facts, by use of affidavits, depositions, admissions, or answers to interrogatories, showing that there is a genuine issue for trial. Moreover, when the nonmoving party bears the burden of proof, it must make a showing sufficient to establish the existence of every element essential to that party's case.

### III. DISCUSSION

Reading Hospital moves for summary judgment based on the argument that Mr. Ochs was effectively its employee when the accident occurred, and therefore, it is immune from tort liability. Mr. Ochs contends that he was an employee of AMN Healthcare and that, as a result, Reading Hospital is liable for its negligence.

The Pennsylvania Workers' Compensation Act, 77 Pa.C.S.A. § 1 *et seq.*, provides the exclusive remedy for an employee injured in the scope of his or her employment.[1] 77

---

[1] Section 481 of the Workmen's Compensation Act, in relevant part, provides:

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, . . . or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

4

Pa.C.S.A. § 481(a). "The Act grants employees the right to a fixed level of compensation for work-related injuries and, in return, exempts their employers from common law liability for negligence." *Mathis v. United Engineers & Constructors, Inc.*, 554 A.2d 96, 101 (Pa. Super. 1989). Immunity from tort liability may extend to other parties under the "borrowed servant" doctrine which is an "outgrowth of the common law rule that a servant who is loaned by his master to a third party is regarded as the servant of that third party while under that third party's direction and control." *Id.* at 102 (citation omitted).

"The question of whether an employer-employee relationship exists is one of law, based on findings of fact." *JFC Temps, Inc. v. W.C.A.B.*, 680 A.2d 862, 864 (Pa. 1996). However, "where the evidence presents an issue of fact, or different inferences can reasonably be drawn therefrom, the question is one for determination by the jury." *Mature v. Angelo*, 97 A.2d 59, 61 (Pa. 1953) (citations omitted).

The Pennsylvania Supreme Court has established the following test in analyzing whether a worker is a borrowed employee:

> The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the

---

77 Pa.C.S.A. § 481(a).

> performance of the work. The payment of wages may be considered, but is not a determinative factor. Although the examination of these factors guides the determination, each case must be decided on its own facts.

*JFC Temps, Inc.*, 680 A.2d at 864 (citations omitted).

It is undisputed that Mr. Ochs was contractually an employee of AMN, which paid him, maintained certain insurance coverage and withheld Social Security taxes. What the finder of fact must determine is whether Reading Hospital had the right to control Mr. Ochs' work and the manner in which he performed it. After careful review of the facts, any reasonable fact finder would have to conclude that Reading Hospital exercised control over Mr. Ochs work sufficient to establish his status as a "borrowed servant."

As discussed above, Reading Hospital assigned Mr. Ochs to the psychiatric unit and established his work schedule. Additionally, a shuttle provided by Reading Hospital took Mr. Ochs to and from work everyday. *See* Dep. of Thomas Ochs, 10/22/14, at 54. He was required to check-in at the beginning of each shift with hospital staff and check out with hospital staff prior to taking a break or lunch. *Id*. at 42, 89. All of Mr. Ochs' work was done on hospital equipment and he was provided with a Reading Hospital vest and badge that he was required to wear at all times while at the hospital.

As the Third Circuit noted in *Williams v. Delta Truck Body Company, Inc.*, a critical component in Pennsylvania's test to determine borrowed servant status is the question of "whether the putative borrowed servant is a highly skilled specialist who requires no further training in order to perform his duties; if he is, he may be considered

6

independent of the putative borrowing employer's control." 892 F.2d 327, 328 (3d Cir. 1989). Here, although Mr. Ochs had previous experience working with the Epic program, he required specialized training on "customizations" made to the program specifically for Reading Hospital. Indeed, Mr. Ochs admitted that he required training upon arrival because "Epic is very customized," and that Reading Hospital employees trained him on their system. *See* Dep. of Thomas Ochs, 10/22/14, at 29-30, 33-35, 222. Mr. Ochs also testified that he had never been an Epic consultant prior to his job at Reading Hospital and specified that he was not a trainer, but rather a consultant. *Id.* at 29, 218. He was therefore not the specialist described in *Williams*.

Plaintiffs' primary argument against a finding that Mr. Ochs was a "borrowed servant" centers on the premise that Reading Hospital did not have the right to control "the manner of the performance" of Mr. Ochs' work. In support thereof, Plaintiffs relies heavily on the staffing contract between AMN and Reading which indicates that AMN had to the right to control the manner of the performance of Mr. Ochs' work. However, "[i]t is well settled under Pennsylvania law that parties are not bound by their characterizations of the employee-employer relationship . . . [but rather] the determining factor is the actual conduct of the parties." *Zaragoza v. BASF Construction Chemicals, LLC*, 2009 WL 260772, at *4 (E.D. Pa. Feb. 3, 2009) (citing *Red Line Express Co, Inc. v. Worker's Compensation Appeal Board*, 588 A.2d 90, 93 (Pa.Cmwlth. 1991)). A contract alone is not binding and here, regardless of the contract, the hospital determined how,

7

when, and where Mr. Ochs worked.

Plaintiffs also point to the fact that Mr. Ochs was in a position to "direct" Reading Hospital's staff. The undisputed facts belie this argument. As an initial matter, there is no evidence that AMN directed Mr. Ochs on how to perform his duties. More importantly, Mr. Ochs' ability to instruct Reading Hospital staff on how to work the Epic system was only accomplished through specialized training at the hospital on Reading Hospital's "customized" Epic system. In addition, Mr. Ochs was under constant supervision by Reading Hospital supervisors and, at least part of the time, he was specifically directed by Reading Hospital supervisors to assist hospital employees. *Id.* at 48, 51. As previously outlined, all relevant aspects of Mr. Ochs' work at Reading Hospital, from his transportation, job assignment, hours, dress and actual performance of his work were controlled by Reading Hospital and its employees.

The undisputed facts establish that Reading Hospital had the right to control Mr. Ochs' work and the manner of performance. Because the issue of control is uncontroverted, I conclude that Reading Hospital exercised sufficient control to make it the statutory employer of Mr. Ochs for purposes of the Pennsylvania Workers' Compensation Act.

IV. **CONCLUSION**

Based on the foregoing, I conclude that, as a matter of law, Mr. Ochs was a statutory employee of Reading Hospital under the Pennsylvania's Workers'

Compensation Act at the time of his accident. Accordingly, Reading Hospital is immune from common law liability and the Pennsylvania's Workers' Compensation Act provides the only remedy to Plaintiffs.

    An appropriate order follows.